[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 15068
By complaint dated August 1, 2000, the Plaintiff husband Victor W. Gagliardi commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown and an equitable distribution of property. The Defendant appeared through counsel on September 27, 2001. Both parties appeared with counsel on November 1, 2001 and presented testimony and exhibits. The Court, after hearing the testimony and reviewing the exhibits, makes the following findings of fact.
The Plaintiff husband married the Defendant wife (whose maiden name is Ranney) on September 30, 1995 in East Hartford, Connecticut. He has continuously resided in the State of Connecticut for one year next preceding the date of filing his complaint. All statutory stays have expired. No minor children have been born to the Defendant wife since the date of the marriage. The Court finds that no state or municipal agency is or has contributed to support of the parties since the date of the marriage.
The Plaintiff was a high school graduate who worked in the commercial industrial construction field as a roofer during his adult life. At the time of the divorce trial, the Plaintiff filed a financial affidavit indicating no present income or weekly expenses. The Court finds the Plaintiff is presently out of work due to a back condition and presently has no income. He now resides with and is supported by his parents. The Plaintiff owes two debts as listed on his financial affidavit; one to Sears and one to Beneficial Company (see financial affidavit dated November 1, 2001). While employed as a roofer by the Eagle Company, the Plaintiff last earned $34.00 per hour.
The Court further finds that the Plaintiff is presently disabled based upon his testimony which was uncontroverted by the Defendant. The Court further finds that the Plaintiff's medical bills and expenses for his recent injury to his back are paid by his worker's compensation carrier. The carrier is presently contesting the compensability of his latest injury and/or condition. The Plaintiff is awaiting a hearing to determine eligibility for worker's compensation benefits. The Court, however, cannot make any finding as to future ability to work and/or earning capacity due to the fact that the Plaintiff has presented insufficient evidence in the record to indicate his future ability to work and/or impairment as to his future earning capacity.
The Defendant is a 30 year old high school graduate who is in good physical health. The Defendant worked in the accounting office of a First Federal Savings Bank branch prior to and during her marriage to the Plaintiff. She also worked additional jobs during the marriage while the CT Page 15069 Plaintiff was out of work. The Defendant presently resides in Orlando, Florida and is employed as a purchasing card administrator for Rollins College. The Defendant presently enjoys $468.00 gross income in her position at the college. The Court further finds that the Defendant is working to her earning capacity.
The Plaintiff and Defendant resided together for a period of time prior to their marriage in September of 1995. The Defendant had a child of a prior relationship that resided with the Plaintiff and Defendant prior to and subsequent to their marriage. While the parties were residing together prior to their marriage in a rented home on Orchard Street, they decided to purchase a home of their own. The parties placed title of the home purchased in August, 1995 in the name of the Defendant and her mother and father. Title could not be placed in the name of the Plaintiff due to the fact that he was in the midst of a paternity trial concerning the birth of a child out of a former relationship. The Defendant had insufficient credit and/or income to purchase said home on her own.
Said home was purchased at 165 Pinebrook Road, Colchester, Connecticut on August 17, 1995 for the sum of $125,000.00. An adjustable rate mortgage note and deed were signed by the Defendant and her mother and father for the sum of $112,500.00 made payable to the Savings Bank of Manchester. The parties resided at said marital residence from 1995 until late 1999 when the Plaintiff first left the residence. The Plaintiff contended that the Defendant went out on many different nights with her sister spending time and money at the casino. The Plaintiff further testified that the Defendant's use of illegal drugs escalated during the marriage and was out of control. The Defendant denies the allegations of excessive drug use and gambling.
The Defendant in turn indicated that the marriage broke down after five years from the date of the marriage as a result of verbal attacks and a physical altercation in 2000 with the Plaintiff. She claimed that said conduct occurred as a result of the effects from the use of prescription drugs for pain prescribed for injuries sustained by the Plaintiff
The Plaintiff returned to the residence in early 2000 and resumed marital relationships with his wife in an attempt to reconcile their differences. The Defendant left the marital residence in April of 2000 advising the Plaintiff that she was taking her child for a school vacation to be with her parents in the State of Florida. Her vacation extended beyond the school week's vacation and after approximately two months, the Defendant advised the Plaintiff that she would not return to Connecticut. The Plaintiff paid the mortgage on the marital residence from April, 2000 through August 31, 2000. The mortgage on the property was not paid by the parties from September, 2000 resulting in a CT Page 15070 foreclosure action commenced against the Defendant and her parents by foreclosure complaint by return date January 9, 2001 (Defendant's Exhibit B). The house was sold by the wife during the pending of this action. She failed to seek relief from the automatic orders of the Court.
Both parties obtained substantial sums of money prior to and during the marriage as a result of injuries sustained in various automobile collisions. As a result of a collision in 1990, the Plaintiff settled for a gross sum of $150,000.00 and after payment of attorney's fees and costs, received the approximate sum of $100,000.00. The Defendant utilized $15,000.00 of said settlement to purchase gym equipment for rehabilitative use and with an additional $5,000.00 utilized to purchase a vehicle leaving him $80,000.00 in cash. The Defendant was further involved in an additional automobile accident in 1994, which he settled on April 4, 1995, netting him the sum of $5,000.00 (see Plaintiff's Exhibit 5). The Plaintiff was also injured in another automobile accident, which was settled on May 8, 1998, with a net amount payable to the Plaintiff in the amount of $39,668.13 (see Plaintiff's Exhibit 4). The Plaintiff therefore had cash in excess of $100,000.00 a year prior to his marriage from the two car accidents in 1990 and 1994. Less than three years from the date of the marriage, the Plaintiff netted an additional $39,000.00 in cash from the third automobile collision.
The Defendant also obtained funds from two separate automobile collisions. She received a net of $15,000.00 to $20,000.00 from settlements of two automobile collision claims involving personal injuries sustained by her. The Defendant received said settlement sums prior to her marriage with the Plaintiff
Both parties testified as to their recollection as to the use and/or disposal of the above sums. Both parties testified on the record that they lived the high life prior to and subsequent to the date of the purchase of their marital residence and subsequent marriage. The Defendant contended that she and the Plaintiff had no funds to purchase the home one month prior to their marriage. She further claimed that her parents gave her $10,000.00 as a down payment to purchase the home. It is difficult for the court to comprehend that the Plaintiff and Defendant needed funds from the Defendant's mother and father to purchase the marital residence in August of 1995. After hearing the testimony of the Plaintiff and the Defendant, the court hereby finds that the down payment for the purchase of the marital residence came from funds deposited in the Defendant's First Federal checking account. The Court concludes however that the funds used to purchase the house came from the automobile injury settlements obtained by the Plaintiff. While the court finds that the Defendant's parents did provide the parties with $10,000.00 to pay for a portion of their wedding, the court does not find CT Page 15071 that the deposit for the purchase of the marital residence was money gifted by the Defendant's parents.
Both parties testified as to their life style prior to and subsequent to the date of the marriage. Both parties indicated that they spent money on dining, limousines, vacations, etc. The Court further finds after analyzing the conflicting testimony of the parties, the Court is left with one clear fact. The parties blew all of their money on excesses with no money reserved to take care of life's necessities during the periods of time that the Plaintiff could not work due to physical disabilities.
The Court is left with the unenviable task of determining who should pay for the liabilities listed on the parties' affidavits and whether or not the Plaintiff and/or Defendant are entitled to alimony payable by the other. The Court concludes that both of the parties acted in a juvenile manner blowing a majority of the money obtained from their personal injury settlements on spirits, food, limousines, trips, cars and so forth. The parties are left with no money, no appreciable assets and plenty of bills. The Court further concludes that the Plaintiff has failed to prove that he cannot work in the future as a result of his present physical disability. The court therefore finds that the Plaintiff will either obtain worker's compensation or suitable employment in the near future. As to the Defendant, the court finds the Defendant needs no alimony to support herself and is working to earning capacity.
The Defendant testified at trial that she intends on filing a petition in bankruptcy to liquidate all of her debts listed on her financial affidavit totaling in excess of $15,000.00. The Plaintiff is left with debts totaling $6,400.00 and at the present time enjoys no weekly income upon which a judgment creditor can obtain a wage garnishment.
The Court concludes that both the Plaintiff and Defendant engaged in uncontrolled financial spending and were equally to blame for the cause or causes of the breakdown of the marriage. The Court orders the Defendant to pay lump sum alimony to the Plaintiff payable in a weekly amount commensurate with her income and ability to pay equal to the amount of money obtained by the Defendant and her parents when the real estate was sold on February 28, 2001. In addition, the Defendant will pay the Plaintiff as alimony an amount equal to one half of the remaining balance on the Beneficial credit card account listed on the Defendant's financial affidavit.
The Court has taken into consideration all of the statutory factors set out in Connecticut General Statutes §§ 46b-62, 46b-81, 46b-82 and other pertinent statutes, tax implications, earnings and earning capacity, differential causes for the breakdown of the marriage and the CT Page 15072 consequences of financial awards set forth below. The Court finds that the facts set out in the complaint are proven and are true, the marriage is broken down on the grounds of irretrievable breakdown. A judgment shall enter dissolving the marriage on the grounds of irretrievable breakdown. It is further ordered that:
1. ALIMONY
The Defendant shall pay lump sum alimony to the Plaintiff in the amount of $6,278.76. Said alimony shall be payable at the rate of $50.00 per week until paid in full. Said order is by way of support and maintenance for the Plaintiff with the intention that said amount is not dischargeable in a bankruptcy filing before a federal district bankruptcy court.
2. RESTORATION OF MAIDEN NAME
The Defendant's maiden name of Ranney is hereby restored.
3. LIABILITIES
The Defendant shall be responsible to pay all of the debts listed on her financial affidavit dated and filed with the court on November 1, 2001 with the exception of the Beneficial-HFC bill in the amount of $2,816.00. The Plaintiff shall be responsible to pay both debts listed on his financial affidavit dated and filed with the court on November 1, 2001.
4. COUNSEL FEES
Each party shall be responsible to pay his or her counsel fees.
5. AUTOMOBILES
The Plaintiff shall have all right, title and interest in and to the 1984 Chevrolet pickup truck listed on his financial affidavit.
The Defendant shall have all use of the 2000 Buick Regal automobile listed on her financial affidavit.
6. BANK ACCOUNTS AND OTHER PERSONAL PROPERTY
The Defendant and the Plaintiff shall have all right, title and interest in and to any other personal property and/or bank accounts presently in their possession and/or presently owned in his or her name. CT Page 15073
Devine, J.